1

2                                                                                                    **O**

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  MICHAEL SHEETS, | Case No.:  2:22-cv-07607-MEMF (PDx) |
| 12 | |
| 13                       Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND DEFENDANTS' REQUEST FOR JUDICIAL NOTICE [ECF NOS. 69, 71]** |
| 14               v. | |
| 15 | |
| 16  ADMINISTRATIVE COMMITTEE OF THE NORTHROP GRUMMAN SPACE & MISSION SYSTEMS SALARIED PENSION PLAN; NORTHROP GRUMMAN CORPORATION; NORTHROP GRUMMAN SPACE & MISSION SYSTEMS CORP. SALARIED PENSION PLAN; and DOES 1 through 10, inclusive, | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21                       Defendants. | |

22

23        Before the Court are a Motion to Dismiss and a Request for Judicial Notice filed by

24  Defendants Administrative Committee of the Northrop Grumman Space & Mission Systems

25  Salaried Pension Plan, Northrop Grumman Corporation, and Northrop Grumman Space & Mission

26  Systems Corp. Salaried Pension Plan. ECF Nos. 69, 71. For the reasons stated herein, the Court

27  hereby GRANTS IN PART the Motion to Dismiss and GRANTS IN PART the Request for Judicial

28  Notice.

I.    **Factual Allegations**[1]

    **A.  Sheets's Initial Employment with TRW and Subsequent Return to Northrop**

Early in his career, Plaintiff Michael Sheets ("Sheets") worked for TRW, Inc. ("TRW") from 1974 to 1979. SAC ¶¶ 1, 16. Sheets subsequently left TRW and began working for Boeing Company ("Boeing"), Sheets's employer for the next twenty-eight years. *Id.* At some point during the twenty-eight years that Sheets worked for Boeing, Northrop Grumman Corporation ("NG") acquired TRW, assuming all liabilities for Sheets's pension benefits with TRW. *Id.* Sheets's TRW pension benefit thus became part of NG's pension plan, the Northrop Grumman Space & Mission Systems Corporation Salaried Pension Plan (the "Plan"). *Id.* The Plan is administered by the Administrative Committee of the Northrop Grumman Space & Mission Systems Corp. Salaried Pension Plan (the "Committee," with the Plan and NG, the "Northrop Defendants"). *Id.* ¶ 2.

In 2004, Sheets began investigating his retirement options and contacted a representative for the Plan. *Id.* ¶¶ 2, 19. The representative told Sheets that his TRW pension benefits were worth only $23 a month. *Id.* ¶ 19. Sheets again contacted a plan representative in 2006, and this time, the representative (identified as "Benita") informed Sheets that the average annual salary of his five highest grossing years would determine his TRW pension benefit, and that if Sheets worked for NG, the salary from that work would "bridge" and contribute to his average annual salary. *Id.* ¶¶ 2, 20. Based on this information, Sheets decided to leave Boeing and seek employment with NG. *Id.* During the hiring process, NG's representatives assured Sheets that his TRW pension benefit would grow based on his time working with NG, an assurance that was repeated even after Sheets was hired by NG. *Id.* ¶¶ 2, 23, 25, 26.

Sheets accepted a position with NG on December 17, 2007, and began working in February 2008. *Id.* ¶ 24. Shortly after Sheets began working for NG, he noticed that the benefits website did not reflect any "bridging" between his prior employment with TRW and current employment with NG. *Id.* ¶ 25. Sheets spoke with several Human Resources ("HR") representatives concerning his

---

[1] All facts stated herein are taken from the allegations in Plaintiff Michael Sheets's Second Amended Complaint, ECF No. 58 ("SAC"), unless otherwise indicated. For the purposes of this Motion, the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations, and is therefore not—at this stage—finding that they *are* true.

Part A and Part D pension benefits. *Id.* ¶ 26. In June 2008, HR representative Esther Solis wrote the

following in an email to Sheets:

> I can pull the history from our database. Our record retention keeps personnel files for
> 10 years and you came back after 17 years. You worked from 6/17/1974 thru 6/22/1979
> when you resigned. Your rehire date was 2/4/08. Your previous service for retirement
> purposes will bridge because you were vested when you left. I think the problem is you
> [have] been here for a very short period of time and the calculation would show the
> same since you have not worked the 1,000 hrs per calendar year required to accrue one
> year of service. Please be patient and wait for a little longer unless you are planning to
> retire this year.

*Id.*

Sheets continued to check his benefits, and in late 2008, noticed that his pension benefits

increased significantly. *Id.* ¶ 29. Sheets continued to check his pension benefits on a semi-regular

basis over the next five years, and his benefits reflected the increase. *Id.* ¶ 30. Based on the

information available to Sheets, Sheets determined that he would be able to retire in 2013 and did so.

*Id.* ¶¶ 31, 32. Sheets began receiving the pension benefits promised to him on May 1, 2014. *Id.* ¶ 32.

When NG hired Sheets in 2007, the operative version of the Plan was the "2006 Traditional

Plan." *Id.* ¶ 12. The 2006 version of the Plan provides for the "bridging" of Sheets's benefits—that

is, for his years spent with NG to count towards his TRW pension benefit. Specifically, Section

G5.02, which governs matters related to "'the rehire of a Participant who had been employed by an

employer before it subsequently became an Affiliated Company.'" *Id.* A rehire is not defined within

the Plan, but the Plan does state that "[t]he concept of 'rehire' includes a situation in which a

Participant has at least one month in which he earns less than 40 Vesting Hours followed by a month

in which he earns 40 or more Vesting Hours." *Id.* ¶ 14. Sheets is a rehire under this non-exhaustive

definition, and as such, Section G5.02 applies. *Id.* ¶ 15. Section G5.02, in turn, provides that an

employee who worked for a company before it was affiliated with NG can receive additional credit

towards his pension under the following circumstances:

> (1) Plan or Portion of Plan Acquired. This paragraph applies to circumstances in which
> the Affiliated Companies assumed, under the terms of the applicable stock or asset
> purchase agreement, the liability to provide previously accrued defined benefit plan
> benefits to the Employee. The methodology for determining the amount of service
> credited under this paragraph is provided in (c)(l).

(2) Employee Acquired. This paragraph applies to circumstances, not covered by (1), under which the Employee was an "acquired employee" (or "acquired retiree") under the terms of the applicable stock or asset purchase agreement. The methodology for determining the amount of service credited under this paragraph is provided in the applicable paragraph of subsection (c).

(3) Employer Acquired. If an Employee is not credited with service under (1) or (2) above, he may still receive credit under this paragraph for preacquisition service. This paragraph applies to service performed for a business or portion of a business that later joins the Affiliated Companies through merger or acquisition. The methodology for determining the amount of service credited under this paragraph is provided in the applicable paragraph of subsection (c).

*Id.* Sheets falls under, at a minimum, situations (1) and (3). *Id.* ¶ 13.

Sheets retired in 2013 after receiving confirmation that his TRW pension had increased and that he was entitled to $1,054.29 per month in pension benefits. *Id.* ¶¶ 3, 32. Sheets received his promised monthly pension benefits for eight years before Defendants informed Sheets that he was not entitled to $1,054.29 per month in pension benefits. *Id.* ¶¶ 3, 34. In 2021, NG informed Sheets that he owed NG $52,299.28 in overpayment of pension benefits and that he was only entitled to $484.13 per month in benefits because he was not entitled to a bridging of his benefits. *Id.* ¶ 34. Sheets challenged the decision, and the Committee dropped its overpayment claim, but insisted that Sheets was not entitled to a bridging of his benefits and that the Committee would not restore the previous $1,054.29 per month in benefits. *Id.* ¶¶ 34–40. Sheets appealed the decision to the Committee, but his appeal was unsuccessful. *Id.* ¶¶ 40–44.

## II.   **Procedural History**

On October 18, 2022, Sheets filed suit in this Court. ECF No. 1. On April 14, 2023, Sheets filed his First Amended Complaint ("FAC"). *See* ECF No. 28. On May 15, 2023, the Northrop Defendants filed a motion to dismiss. ECF No. 36 (the "Prior Motion"). The Court granted the Northrop Defendants' first motion to dismiss in part. ECF No. 55 ("Prior Order"). Specifically, the Court held that Sheets: (1) adequately pleaded a claim for benefits owed to him under ERISA (Prior Order at 9–13); (2) adequately alleged his breach of fiduciary duty claim, which was not barred by the statute of limitations on the face of the FAC (Prior Order at 13–16); (3) failed to allege a claim that the Northrop Defendants failed to provide Sheets with his claim file (Prior Order at 17); and (4) had his state claims preempted by ERISA (Prior Order at 18–19).

4

Sheets filed his Second Amended Complaint ("SAC") on December 19, 2023. *See* SAC. The SAC brings the following claims against Defendants: (1) To Recover Benefits, Attorneys' Fees and Pre-Judgment and Post-Judgment Interest under an ERISA plan – 29 U.S.C. Sections 1132(a)(1)(B), (g)(1) (SAC ¶¶ 48–57); (2) For Breach of Fiduciary Duty, Equitable Relief (Including Waiver, Estoppel and Surcharge), Declaratory Relief, and Attorneys' Fees and Pre-Judgment Interest, under an ERISA Plan – 29 U.S.C. Sections 1132(a)(3)(B), (g)(1) (SAC ¶¶ 58–83); (3) For Statutory Fees for Failure to Provide a Copy of the Plan Documents in Violation of 29 U.S.C. Sections 1024(b); 1132(c)(1)(B) (SAC ¶¶ 84–94). The SAC also added the Committee as named defendant.

The Northrop Defendants filed the instant Motion to Dismiss and an accompanying Request for Judicial Notice on February 6, 2024. ECF Nos. 69 ("Motion" or "Mot."), 71 ("RJN"). The Motion is fully briefed. *See* ECF Nos. 73 ("Opposition" or "Opp'n"), 74 ("Reply"). The Court held the hearing on the Motion on July 18, 2024.

## REQUEST FOR JUDICIAL NOTICE

### I.    Applicable Law

A court may judicially notice facts that: "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b) ("Rule 201"). Under this standard, courts may judicially notice "undisputed matters of public record," but generally may not notice "disputed facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). Public records, including documents on file in federal or state court, are proper subjects of judicial notice. *Harris v. County of Orange*, 682 F.3d 1126, 1131–32 (9th Cir. 2012).

On a motion to dismiss, courts are generally prohibited from "consider[ing] any material beyond the pleadings." *United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011) (quoting *Lee*, 250 F.3d at 688). Courts generally only consider the complaint and other materials "submitted with and attached to the Complaint." *Id.* at 999. Documents not attached to the complaint—including documents that might otherwise be subject to judicial notice—may only be considered if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's

claim; and (3) no party questions the authenticity of the document." *Id.* (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.2006)). A court considering a motion to dismiss should not take judicial notice of material that cannot be considered for the motion. *See Lee*, 250 F.3d at 689–90. Courts may also consider documents under the incorporation by reference doctrine, which is appropriate where "the documents' 'authenticity . . . is not contested' and 'the plaintiff's complaint necessarily relies' on [the documents]." *Lee*, 250 F.3d at 688; *see also Parrino v. FHP, Inc.*, 146 F.3d 699, 706 n.4 (9th Cir. 1998) (noting that the incorporation by reference doctrine covers extrinsic evidence provided by a defendant on a Rule 12(b)(6) motion).

## II. **Discussion**

The Northrop Defendants request[2] that the Court consider the following exhibits as either judicially noticeable or under the incorporation by reference doctrine:

1. The Summary Plan Description for the Northrop Grumman Pension Program, dated January 2020 (ECF No. 70-1);

2. The Northrop Grumman Space & Mission Systems Corp. Salaried Pension, January 1, 2006 Restatement (ECF No. 70-2);

3. The "Cash Balance" version of the Northrop Grumman Space & Mission Systems Corp. Salaried Pension Plan, January 1, 2006 Restatement (ECF No. 70-3);

4. The Separation Agreement and General Release As Sector 2013 Voluntary Reduction in Force, executed by Michael Sheets on October 28, 2013 (ECF No. 70-4);

5. An August 8, 2022 letter from Robert J. McKennon of McKennon Law Group PC to "Ms. Garcia" at the Northrop Grumman Benefits Center, Northrop Grumman Corp., 2980 Fairview Park Drive, Falls Church, VA 22042 (ECF No. 70-5);

6. A September 6, 2022 letter from Robert J. McKennon of McKennon Law Group PC to "Ms. Garcia" at the Northrop Grumman Benefits Center, Northrop Grumman Corp., 2980 Fairview Park Drive, Falls Church, VA 22042 (ECF No. 70-6);

---

[2] Sheets does not oppose the RJN. *See generally*, Opp'n.

7.  A September 20, 2022 letter from Robert J. McKennon of McKennon Law Group PC
    addressed to "Sir/Madame" and to the attention of "Claims Supervisor" at the
    Northrop Grumman Benefits Center, Northrop Grumman Corp., 2980 Fairview Park
    Drive, Falls Church, VA 22042 (ECF No. 70-7);

8.  A March 21, 2022 letter from Christine Melsheimer of the Northrop Grumman
    Benefits Center to Michael A. Sheets (ECF No. 70-8);

9.  A July 21, 2022 letter from Leslie R. Melton, on behalf of the Benefits Plans
    Administrative Committee of the Northrop Grumman Space & Mission Systems
    Corp. Salaried Pension Plan, to Michael A. Sheets (ECF No. 70-9);

10. Michael A. Sheets's "Notes on Northrop Grumman pension audit issue facts" dated
    January 1, 2022 (ECF No. 70-10);

11. A May 17, 2022 letter from Michael A. Sheets to "The Northrop Grumman Benefits
    Administrative Committee, Pension plan administrator, Human resources and to
    whomever else which this matter may concern" (ECF No. 70-11); and

12. The "Part A Supplement To The Northrop Grumman Pension Program Summary
    Plan Description," dated January 2008 (ECF No. 70-12).

RJN at 1–2.

The Court finds that the first three exhibits are plan documents that can be incorporated by
reference because they are integral to Sheets's claims, and the authenticity of these documents is not
contested. *See* SAC ¶¶ 12, ("The version controlling Plaintiff's pension benefits is the "'2006
Traditional Plan'"), 89 ("The 2020 SPD provides an address for plan participants to send their
requests. Plaintiff sent each of his requests to the designated address. He complied with NG's and
the Committee's instructions and sent his requests to the entity that had been delegated the duty to
address such requests on behalf of the Plan. This was sufficient to trigger the operative duty to
provide the Plan documents.").

It does not appear to the Court that Exhibit 4 is properly considered under the incorporation
by reference doctrine. Sheets did not reference this agreement in his SAC, and the release is not
integral to his *claims*, although it may be integral to the Northrop Defendants' *defense* because the

release could bar Sheets's claims. Because the Court finds that Exhibit 4 is not properly considered, the Court does not reach below the Northrop Defendants' argument that the release bars Sheets's claims at this stage.

The Court finds that Exhibits 5, 6, and 7 are appropriately considered under the incorporation by reference doctrine because they are integral to Sheets's claim for statutory violations under ERISA (third cause of action), and the authenticity of these documents is not contested. *Id.* ¶ 85 ("On August 8 and September 6, 2022, Plaintiff sent letters to the Plan via the Committee, the ERISA plan administrator. The letters requested a complete copy of the claim file, including copies of all documents, records, and other information relevant to his claim for benefits, as well as all Plan documents, all Plan summaries, and all relevant correspondence and communications."). The Court does not find that Exhibit 7 is appropriate for judicial notice, as it is not a proper subject of judicial notice as a private letter and is thus not generally known within the Court's jurisdiction. The Court also does not find that Exhibit 7 can be considered under the incorporation by reference doctrine, as the SAC does not mention any letter from counsel to the Plan Administrator dated September 20, 2022.

The Court also finds that Exhibits 8, 9, 10, and 11 are appropriately considered under the incorporation by reference doctrine as they are integral to Sheets's claims and the parties do not contest the authenticity of these documents. However, the Court DENIES the RJN as to Exhibit 12, as this document is neither appropriate for judicial notice nor is incorporated by reference as it is not integral to Sheets's claims, which are not based on the 2008 version of the Plan.[3]

## **MOTION TO DISMISS**

### **III.    Applicable Law**

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

---

[3] The Court notes that the current RJN largely mirrors the request for judicial notice the Northrop Defendants submitted to the Court last time, and upon which the Court ruled in its Prior Order. Prior Order at 6–8.

1  relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

2  *Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff

3  pleads factual content that allows the court to draw the reasonable inference that the defendant is

4  liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

5       The determination of whether a complaint satisfies the plausibility standard is a "context-

6  specific task that requires the reviewing court to draw on its judicial experience and common sense."

7  *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view

8  them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir.

9  2017); *Lee*, 250 F.3d at 679. But a court is "not bound to accept as true a legal conclusion couched

10  as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

11       As a general rule, leave to amend a dismissed complaint should be freely granted unless it is

12  clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St.*

13  *Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

14  **IV.   Discussion**[4]

15       The Northrop Defendants move to dismiss Sheets's claims on several bases, including bases

16  previously raised by the Northrop Defendants in the Prior Motion and already ruled upon by this

17  Court in its Prior Order. As the Court explains further below, the Court finds that (1) Sheets has not

18  adequately pleaded a claim for benefits owed to him under ERISA, (2) Sheets's breach of fiduciary

19

20

21

---

22  [4] Northrop asks the Court to dismiss the Doe Defendants. Mot. at 3 n.1. Sheets does not address this argument in his Opposition. *See generally,* Opp'n. It does not appear to the Court that the propriety of Doe pleading is

23  decided. *Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1158 (C.D. Cal. 2018) (Defendants cite *Buckheit v. Dennis*, 713 F.Supp.2d 910, 918 n.4 (N.D. Cal. 2010), for the observation that

24  '[g]enerally, Doe pleading is improper in federal court.' Although there is no provision in the Federal Rules permitting the use of fictitious defendants, [Citation], there is a provision in the Local Rules of the Central

25  District of California allowing the practice of pleading up to 10 Doe defendants without the need for the leave of the Court. C.D. Cal. L.R. 19–1. This alone shows that, at least in some circumstances in the Central District

26  of California, Doe pleading is proper.") (internal quotations omitted). However, it does not appear that this case is one where Doe pleading is appropriate—that is, the present case does not seem like one where "the

27  viability of a claim against a known party depends on the actions of a party whose identity is unknown at the time of the pleading." *Id.* As such, the Court GRANTS the Motion on this basis and DISMISSES the Doe

28  Defendants. *See also* Fed. R. Civ. P. 4(m) (a plaintiff must dismiss defendants not served within 90 days after the complaint is filed unless the plaintiff has shown good cause for the failure to do serve).

duty claim fails insofar as it is based on improper interpretation of plan terms, inadequate hiring, supervision, training, or maintaining of records, and (3) Sheets's statutory penalty claims fail.

### A. Sheets Fails to Plead a Claim for Benefits Owed to Him Under ERISA

Under ERISA, a plan participant can bring suit to recover benefits owed to him under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B) (emphasis added). To bring such a claim, a plaintiff must allege that (1) he is a plan participant, beneficiary, or fiduciary and (2) the benefits he seeks are owed to him under the terms of the plan. *See id.*

In their Motion, the Northrop Defendants again argue that Sheets has not adequately pleaded his 29 U.S.C. § 1132(a)(1)(B) claim because Sheets is not entitled to a bridging of his Part A benefits, and as such, Sheets has not pleaded the second element of the claim—that the benefits Sheets seek are owed to him. Mot. at 14. Specifically, the Northrop Defendants argue that Sheets is not a rehire, and as such, Article G7 does not apply to Sheets (Mot. at 15) and that Section G5.02 does not provide for "bridging" of the earnings component of the pension benefit formula (Mot. at 16). Instead, the Northrop Defendants contend that Schedule 7 provides the calculation for Sheets's Part A benefits, and that provision does not provide for any "bridging." Mot. at 7–8.

*The Plan has two parts—the Traditional Plan and the Cash Balance Plan.*

At the time Sheets was hired by NG, the Plan consisted of a "traditional" version and "cash balance" version, both dated as of January 1, 2006. *See* ECF Nos. 70-2 ("Traditional Plan"), 70-3 ("Cash Balance Plan").

*The Traditional Plan governs Part A benefits.*

Article 4.01(a) of the Traditional Plan states that Schedule 7 governs the benefit formula calculation for participants whose severance from service date occurred before January 1, 1989. Because Sheets left TRW in 1979, Schedule 7 applies under the Traditional Plan.

Schedule 7, in turn, provides that "the Accrued benefit . . . *as of December 31, 1989*[5] shall be determined in accordance with the provisions of this Schedule, *using the <u>Benefit Service</u>, <u>Earnings</u>,* [and] <u>Estimated Primary Social Security Amount</u> . . . applicable to such . . . Participant *as of . . .*

---

[5] There is a different date for "Highly-Compensated Participants," but the parties seem to agree that Sheets was a "non-Highly Compensated Participant" under the Plan.

*December 31, 1989.*" *Id.* at p. 393 (emphasis added). The calculation for retirement benefits for a

participant under Schedule 7 is:

> a. 40% of [the participant's] <u>Earnings</u>;
>
> b. Less 50% of the amount by which the <u>Estimated Primary Social Security Amount</u> exceeds $450;
>
> c. Increased by a percentage of [the participant's] <u>Earnings</u> equal to .5% multiplied by his Years of <u>Benefit Service</u> in excess of 30, or reduced by 1/360th for each month by which the number of his months of <u>Benefit Service</u> is less than 360, if any; and
>
> d. Increased by the conversion factor.

*Id.* This benefit is referred to as a participant's "Part A" benefits.

> *The Cash Balance Plan governs Part D benefits.*

The Cash Balance Plan provides for a different benefit—a "Part D" benefit. Part D benefits

are calculated by looking to "the Participant's <u>Benefit Credits</u> and <u>Interest Credits</u>." Cash Balance

Plan, § 7.01, p. 29 (emphasis added). <u>Benefit Credits</u> are "an amount equal to the percentage of [the

Participant's] Eligible Pay . . . based on the <u>Benefit Points</u> [the Participant] has attained." Cash

Balance Plan, § 7.02, p. 30 (emphasis added). <u>Benefit Points</u> are a function of a participant's <u>Credit</u>

<u>Age</u> and <u>Credited Service</u>. Cash Balance Plan, § 7.04, p. 34.

The Cash Balance Plan also provides "special rules for determining the amount of an

*Acquired Employee's initial service and compensation credit under this Plan* for service performed

fo*r an employer that was not an Affiliated Company when the service was performed*. Cash Balance

Plan, § G4.01, p. 98 (emphasis added). Sheets, who performed services for TRW before TRW was

an Affiliated Company, would fall under this provision. Under Article G4, participants like Sheets

who worked for "*an employer that was not an Affiliated Company when the service was performed*"

receive service credit applicable to their "<u>Vesting Service</u>, <u>Early Retirement Eligibility Service</u>, and

<u>Credited Service</u>," but the Plan explicitly states this service credit "does *not* apply to <u>Benefit</u>

<u>Service</u>." Cash Balance Plan, §§ G4.01, G4.02(b), pp. 98, 99 (emphasis added).

The upshot is that under the Cash Balance Plan, Sheets was entitled to a bridging of his time

at TRW and NG for the calculations of his *Credited Service*, which is *not* a component of his Part A

1  benefits calculation but *is* a component of his Part D benefit calculation. As such, the Plan provides

2  for the bridging of Sheets's time at TRW and NG for calculating his *Part D benefit*, *not his Part A*

3  *benefit*, which is what Sheets alleges he is entitled to.

4      Sheets argues that, under the Traditional Plan, his *Part A benefit* is calculated using a

5  "bridging" of his salary at TRW and NG. Sheets first points to Article G7, which governs rehires.

6  Article G7 states that it "provides rules on the treatment of Participants who are rehired *after an*

7  *interruption of employment with the Affiliated Companies*." Traditional Plan, § G7.01(a), p. 162. The

8  Northrop Defendants argue that this provision does not apply to Sheets, who did not work for TRW

9  when it was an affiliated company, and as such, could not be rehired after an interruption of

10 employment with an affiliated company. Sheets only argues that the court previously found that

11 Sheets could be a rehire. *See* Opp'n at 10 (citing Prior Order at 10). However, in the cited portion of

12 the Prior Order, the Court did not apply any of the benefit calculation provisions from Article G7,

13 noting only that Article G7 provided that the rules concerning benefits calculations for those who,

14 like Sheets, where a plan participant employed by an employer before it became an affiliated

15 company, could be found in Section G5. Prior Order at 10. While the Northrop Defendants

16 previously argued that Section G5 did not apply, the Northrop Defendants now argue that Section

17 G5, even if it applies, only provides bridging for "Vesting Service, Early Eligibility Service and

18 Credited Service." Mot. at 16 (citing to Traditional Plan, § G5.02(b)).[6] As such, Section G5 does not

19 provide for the bridging of any component of the formula used to calculate Sheets's Part A benefits.

20 As the Court explained above, Sheets's Part A benefits are calculated using his Earnings, Estimated

21 Primary Social Security Amount, and Benefit Service. Not only does section G5 explicitly not apply

22 to the Earnings component, it also does not apply to the other components of the Part A benefits

23 calculation, as Vesting Service, Early Eligibility Service, and Credited Service are *not* part of the

24 Part A benefits calculation.[7]

25

26 [6] The Northrop Defendants' Motion cites section G7.05(b), but it appears this was inadvertent, as there is no
such section. *See* Traditional Plan at p. 165 (no section G7.05(b)).

27 [7] The Court notes that in G7.06 (p. 165), there does appear to be a situation where a rehire's salary would be
28 bridged. Specifically, G7.06(a) states that "Under a Final Average Salary Plan, pre-rehire years are applied, if

1    Sheets's counsel, both in Sheets's Opposition and at the hearing, did not point to any

2    provision providing for the bridging of Sheets's <u>Earnings</u> or <u>Benefit Service</u> as those terms are used

3    in Schedule 7. As such, the Court finds that Sheets has not plausibly alleged that he was entitled to a

4    bridging of any of the factors of his Part A benefit formula.

5        As such, the Court GRANTS the Motion as to Sheets's Recovery of Benefits Claim.

6    Furthermore, Sheets has not shown that this defect is curable. Although it appears from the

7    overpayments that others within NG have interpreted the Plan as Sheets has, Sheets has not pointed

8    the Court to any specific provisions within the Plan terms providing for the bridging of his TRW and

9    NG salaries in calculating his Part A benefits. As such, the Court DENIES leave to amend.[8]

10                **B.  Sheets Adequately Alleges His Breach of Fiduciary Duty Claim**

11        "To state a claim for breach of fiduciary under ERISA, a plaintiff must allege that (1) the

12    defendant was a fiduciary; (2) the defendant breached a fiduciary duty; and (3) the plaintiff suffered

13    damages." *Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1026 (9th Cir. 2021).

14        The Northrop Defendants mount a series of arguments as to why the Court should dismiss

15    Sheets's breach of fiduciary duty claim. The Court addresses each in turn.

16                i.  <u>Sheet's fiduciary duty claim, insofar as it is based on improper interpretation</u>
17                    <u>or investigation, fails.</u>

18        The Northrop Defendants first argue that Sheets's breach of fiduciary duty claim, to the

19    extent it is based on a failure to properly interpret the Plan or investigate his claims, fails because his

20    claim for benefits owed fails for the reasons discussed above. Mot. at 17. As the Court found above,

21    Sheets has failed to properly plead his 29 U.S.C. § 1132(a)(1)(B) claim. As such, the Court agrees

22    that there is no breach of fiduciary duty insofar as interpretation of the Plan terms or investigation of

23    Sheets's claims are concerned. As such, the Court GRANTS the Motion as to this ground.

24    _____

25    necessary, to obtain a sufficient number years for purposes of applying the plan's rules to determine the
      Participant's Final Average Salary." But that section would only apply where benefits were suspended under
26    G7.02, and reading through that section, it does not appear that section applies, nor does Sheets argue that it
      does (or that it is ambiguous).

27    [8] Because the Court finds that Sheets has not adequately pleaded his claim for benefits owed under ERISA,
28    the Court need not consider the Northrop Defendants' argument that the Committee's interpretation is
      reasonable and survives under an abuse of discretion standard.

ii.  <u>Sheets adequately alleged misrepresentations as a separate basis for his breach of fiduciary duty claim.</u>

Sheets also bases his breach of fiduciary claim on the Northrop Defendants' material misrepresentations upon which Sheets relied. SAC ¶ 62. The Northrop Defendants argue that the purported misrepresentations upon which Sheets bases his breach of fiduciary duty claim are not misrepresentations at all, and as such, the claim fails. Mot. at 17–19. Specifically, the Northrop Defendants argue that no Northrop representative told Sheets his *earnings* would bridge; instead, Sheets was told that his *service* would bridge, which was a true statement because Sheets accrued a Part D benefit that was calculated on a bridging of his years of service with TRW and NG. Mot. at 18.

While the Northrop Defendants are correct that Benita and Solis are not alleged to have explicitly mentioned the bridging of Sheets's salary, the Northrop Defendants ignore that the SAC includes an alleged statement by George Davis that Sheets's earnings would bridge:

> 23. After a thorough job search, Plaintiff obtained an offer for a position at NG. In late 2007, before accepting the offer, Plaintiff spoke with a NG Human Resources Hiring Manager, George Davis. Mr. Davis again confirmed that due to Plaintiff's previous time at TRW, *his subsequent employment would "bridge" and his new salary would be used to calculate his pension benefits*.

SAC ¶ 23 (emphasis added). This one misrepresentation is sufficient, and the Northrop Defendants do not meaningfully contest this, either in their briefing or at the hearing on the Motion.

Moreover, at the motion to dismiss stage, the Court draws all reasonable inferences in Sheets's favor. In doing so, some of the other statements by NG representatives could also be read as stating that Sheets's Part A benefits would bridge. For example, Sheets alleges that Benita informed him that "if he returned to work for NG, his previous years of service would count towards his pension benefits." SAC ¶ 20. Although, as the Northrop Defendants points out, Benita allegedly referred to years of service as bridging, reading all inferences in Sheets's favor, it is plausible to interpret Benita's statement as asserting that Sheets's prior employment with TRW would factor into his pension benefit calculations, including his salary.

At the hearing and in their Opposition, the Northrop Defendants argued that the alleged misrepresentations are equally consistent with liability as they are with no liability, and as such, the claims are only possible not plausible. Reply at 7. However, as Sheets's counsel argued at the

1   hearing, the Court must *first* make all reasonable inferences in the plaintiff's favor *before*

2   determining whether the misrepresentations are equally consistent with liability as they are with no

3   liability. Having done so, the Court still finds that Sheets has plausibly alleged actionable

4   misrepresentations. Even if the alleged misrepresentations made by Solis and Benita do not clear this

5   hurdle, the alleged misrepresentation by Davis—who Sheets alleges informed him that his new

6   salary would be used to calculate his pension benefits (SAC ¶ 23)—certainly plausibly alleges that

7   Davis misrepresented how the Plan would apply if Sheets returned to NG.

8           As such, the Court DENIES the Motion as to this ground.

9                    iii.    The misrepresentations were made by plan fiduciaries.

10          In their Prior Motion, the Northrop Defendants argued that Sheets could not base his breach

11  of fiduciary duty claim on statements made by George Davis, Esther Solis, or Benita (last name

12  unalleged) because these were not statements made by a plan administrator or benefits counselor.

13  *See* Prior Motion at 16. The Northrop Defendants re-raised this argument in the instant Motion. The

14  Court already rejected this argument in its Prior Order. *See* Prior Order at 15 ("*Bafford* explains that,

15  in contrast, conduct such as communicating with plan beneficiaries about plan benefits—as Sheets

16  alleges Davis and Solis did here—is a fiduciary function, no matter who performs it, and is

17  actionable as a breach of fiduciary duty. [Citation]. Northrop's arguments to the contrary fail."). The

18  Northrop Defendants do not present any new argument as to why the Court should reconsider its

19  ruling, and as such, the Court DENIES the Motion on this basis.

20          The Northop Defendants also argue that Davis and Solis did not owe Sheets a fiduciary duty

21  before he became an employee, and as such, their statements prior to Sheets's rehiring cannot form

22  the basis of Sheets's breach of fiduciary duty claim. Mot. at 20. However, the non-binding case that

23  the Northrop Defendants cite to actually suggests the opposite. In *Flanigan v. General Electric Co.*,

24  242 F.3d 78, 84 (2d Cir. 2001), the Second Circuit stated that "[c]ommunicating information *about*

25  *future plan benefits* is indeed a fiduciary obligation," *id.* (citing *Varity Corp. v. Howe*, 516 U.S. 489,

26  498–99 (1996) emphasis added)), and that contrary to the Northrop Defendants' argument,

27  "[f]iduciaries may be held liable for statements pertaining to future benefits if the fiduciary knows

28  those statements are false or lack a reasonable basis in fact." *Id.* The Second Circuit did not find, in

contradiction to the Northrop Defendants' statement, that prospective employees were not owed

fiduciary duties as a matter of law. *See id* at 85 (noting that the plaintiffs were "potential" Lockheed

employees, and had there been a plan in effect before the plaintiffs moved over to Lockheed,

"Lockheed might have had a duty to disclose the details of [the plan] to" the plaintiffs). The Northop

Defendants have not shown that any binding authority forecloses Sheets from basing his breach of

fiduciary duty claim on statements made prior to his employment. As such, the Court finds that

Sheets *can* base his breach of fiduciary duty claims on communications made to him prior to his

employment with NG in 2008, and DENIES the Motion on this basis.

Northrop next argues that Sheets cannot base his fiduciary duty claim on oral

misrepresentations, but cites to no binding authority on this point.[9] Furthermore, Sheets's claim is

not based solely on oral misrepresentations, as Sheets points to an email from Solis where Solis

explains that Sheets's "previous service for retirement purposes will bridge because you [Sheets]

were vested when you left." SAC ¶ 26. Solis does not specify the type of service that will bridge, and

one plausible interpretation of Solis's email is that the "service" referred to herein is the "Benefit

Service" used to calculate Part A benefits. The Court DENIES the Motion as to this basis.

> iv.  <u>Sheets's claims as pleaded fail to state a claim based on inadequate hiring,
> training, or supervising, or the failure to maintain records.</u>

Next, the Northrop Defendants argue that Sheets failed to state a claim based on inadequate

hiring, training, or supervision because he has not alleged any facts concerning the methods or

manner in which the Northrop Defendants hired, trained, or supervised their employees. Mot. at 20.

Sheets does not address this in his Opposition. *See generally*, Opp'n. In the SAC, the only

allegations Sheets makes as to inadequate hiring, training, or supervision is in paragraph 64:

> 64. The Committee and NG owed Plaintiff and all Plan participants a duty to hire, train,
> and supervise its personnel to anticipate confusion over eligibility for Plan benefits and
> coverage. *See Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 471-72 (7th Cir. 2010).
> The Committee and NG had an obligation to have measures in place to guarantee that

---

[9] Northrop cites to *Harris v. Ventyx Inc.*, Case No. S-11-308 FCD/GGH, 2011 WL 3584498, at *4 (E.D. Cal. Aug. 12, 2011), where the court held that "claims based *solely on alleged oral misrepresentations* are not cognizable under ERISA when those representations *do not conform to the written terms of the plan*." (emphasis added). However, here, Sheets does not rely solely on al alleged oral misrepresentation, but also points to a written (alleged) misrepresentation. As such, *Harris* is distinguishable.

truthful and accurate information was provided to employees concerning pension benefit information, including at times when they were asked for this information and also at times when they were not asked for this information but imparted it. The Committee breached its fiduciary duty to Plaintiff by failing to properly investigate Plaintiff's claim, failing to properly interpret the Plan language and to impart accurate information regarding his pension benefits, and failing to pay such benefits as were represented to him over a period of many years.

SAC ¶ 64.

The Court finds that these allegations are insufficient to state a breach of fiduciary duty claim based on inadequate hiring, training, or supervision. As the Northrop Defendants point out, Sheets does not provide any facts as to *how* the Northrop Defendants breached this duty—that is, what was wrong with the way the Northrop Defendants hired, trained, or supervised their employees.

Northrop also argues that Sheets's breach of fiduciary duty claim based on inadequate record maintenance is still deficient. Mot. at 20. In the Prior Order, the Court dismissed Sheets's breach of fiduciary duty claim insofar as it was based on inadequate record maintenance because Sheets did not plead any non-conclusory allegations in support of this theory. Prior Order at 16. In response, Sheets points to paragraph 65 of the SAC:

> 65. The Committee and NG breached their fiduciary duty to Plaintiff by failing to maintain adequate records to establish the correct value of Plaintiff's pension benefits. *See* 29 U.S.C. § 1059(a)(1) (An employer is required to "maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees."); *Secretary of Labor v. Doyle*, 675 F.3d 187, 202 (3d Cir. 2012) ("Rather, ERISA § 404(a) incorporates the fiduciary standards of trust law, of which several are relevant here. In particular, a trustee has a duty to maintain financial records[.]") (internal citations omitted). The Committee and NG failed to "maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees," 29 U.S.C. § 1059(a)(1), by not maintaining or searching for the records documenting its prior promises to Plaintiff that he was entitled to the increased pension benefits. The failure to maintain and search for these records was a breach of fiduciary duty. *See Low-Iacovina v. Benefit Plan Committee of Nonbargained Program of AT&T Pension Benefit Plan*, 2017 WL 6541772, **5-7 (C.D. Cal. 2017); *Skelton v. Radisson Hotel Bloomington*, 33 F.4th 968 (8th Cir. 2022) (failure to maintain records and/or a system to adequately maintain them was a breach of fiduciary duty).

SAC ¶ 65.

The Court finds that these allegations are insufficient because Sheets only states in a conclusory manner that the Northrop Defendants "fail[ed] to maintain adequate records to establish the correct value of Plaintiff's pension benefits" (SAC ¶ 65) without providing any allegations

concerning *how* the Northrop Defendants failed to adequately maintain their records and thus breached their fiduciary duty. The Court need not treat conclusory allegations as true in reviewing a motion to dismiss. *See Iqbal*, 556 U.S. at 678 (a court is "not bound to accept as true a legal conclusion couched as a factual allegation"). The Court thus GRANTS the Motion as to this basis. Dismissal will be WITHOUT LEAVE TO AMEND as the Court has already provided Sheets with leave to amend once before and he has given this Court no indication that he will be able to successfully amend to address this defect.

> v.   The breach of fiduciary duty claim is timely.

The Northrop Defendants also re-raised their argument that Sheets's claims are barred by ERISA's statute of limitations, an argument which the Court rejected in its Prior Order. *See* Prior Motion at 13 (arguing that the breach of fiduciary duty claim is untimely under ERISA § 413); Mot. at 21–22 (same); Prior Order at 13–15 (finding ERISA § 413 does not bar the breach of fiduciary duty claim). In its Prior Order, the Court held that under the two-step process the Ninth Circuit has adopted in considering the ERISA statute of limitations, on the face of the FAC, the statute of limitations began to run in 2021, and that as such, Sheets's claims were timely under either the three-year or six-year bar. Prior Order at 13–15. The Court's analysis still stands, as the facts in the SAC concerning this point are the same as those in the FAC.

29 U.S.C. § 1113 provides as follows:
No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.

Here, under the first prong, the last affirmative misrepresentation Sheets affirmatively alleges in his complaint was made in 2008 (this does not include the misrepresentations on the NG Benefits

website, which Sheets also checked until retiring in 2013, SAC ¶¶ 30–32). SAC ¶ 26. As such, the six-year deadline would have run in 2014. Under the second prong, Sheets did not have actual knowledge of the violation until his benefits were recalculated, in 2021, and under that prong, the three-year deadline will run in 2024. SAC ¶ 34. The statute provides that the earlier of the two dates controls—in this case, 2014—unless there is fraud or concealment, in which case, the deadline to file an action is six years after the discovery of the breach or violation. 29 U.S.C. § 1113.

The Northrop Defendants attempt to argue that Sheets cannot show the fraud or concealment exception to the statute of limitations applies, and as such, Sheets's claims expired. Mot. at 21–22; *see* 29 U.S.C. § 1113 (breach of fiduciary duty claims under ERISA must be brought three years after the earliest date on which the plaintiff had actual knowledge of the violation unless there was fraud or concealment, in which case, a six-year statute of limitations applies).

In *Barker v. American Mobile Power Corp.*, 64 F.3d 1397, 1402 (9th Cir. 1995), the Ninth Circuit considered the fraud or concealment exception, and found that the plaintiffs in that case had failed to invoke the exception because they failed to show that defendants "committed specific acts of fraud or concealment." *Id.* For Sheets to clear the bar at this stage, he must allege that NG "made 'knowingly false misrepresentations with the intent to defraud'" Sheets or made "affirmative acts" to hide the misrepresentations made. *Guenther v. Lockheed Martin Corp.*, 972 F.3d 1043, 1057 (9th Cir. 2020). Here, Sheets alleges that the Committee and NG "needed experienced personnel," and so they "deceived Plaintiffs[ ] and others, by stating that Plaintiff's time with TRW and NG would be bridged and jointly considered to determine Plaintiff's pension benefits" with the intent "to induce Plaintiff to work for NG." SAC ¶ 72. Sheets further alleges that the Committee "knew and expected that Plan participants such as Plaintiff would rely on such statements to seek employment with NG, and Plaintiff did in fact rely on such statements." *Id.* As such, the Court finds that Sheets has adequately alleged fraud, the fraud or concealment exception applies, and Sheets's claims are not barred because the tolling is measured from the date of discovery—2021—and runs six years later—2027.

As such, the Court DENIES the Motion as to this basis.

/ / /

### C.  Sheets Fails to Allege a Claim for Statutory Violations

Under 29 U.S.C. § 1024(b)(4), a plan administrator "shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." Similarly, under 29 U.S.C. § 1132(c)(1)(B), a plan administrator "who fails or refuses to comply with a request for any information which such administrator is required . . . to furnish" "may . . . be personally liable . . . in the amount of up to $100 a day . . . ." In the SAC, Sheets brings claims under both 29 U.S.C. §§ 1024(b) and 1132(c)(1)(B) for the Plan and Committee's failure to provide Sheets with the necessary plan documents upon request. SAC ¶¶ 84–94. The Court finds that Sheets claims fail to state a claim for a violation of these statutes.

The 2020 SPD for the Plan informs participants of their right to request plan documents. *See, e.g.,* ECF No. 70-1 ("Ex. 1") at pp. 1, 58. The SPD also provides that, if participants wish to appeal the plan administrator's decision regarding benefits claims, any such request must be *sent* to the following address:

> Administrative Committee
> (Insert the legal name of your plan as described in "About the Program")
> Northrop Grumman Benefits Center
> PO Box 770003
> Cincinnati, OH 45277-1060

Ex. 1 at p. 60. The SPD further specifies that *in case of an appeal*, the participant has the right "to receive copies of, upon request and free of charge, any documents, records, or other information relevant to [his] claim." *Id.* at pp. 60–61.

> Finally, the SPD provides that the plan administrator's general contact is:
> Administrative Committee
> (Insert the legal name of your plan as described in "About the Program")
> Northrop Grumman Corporation
> 2980 Fairview Park Drive
> Falls Church, VA 22042-4511
> 1-800-894-4194

Ex. 1 at p. 63.

/ / /

Here, the two requests for information that Sheets sent were addressed to:

Northrop Grumman Benefits Center
NORTHROP GRUMMAN CORP
2980 Fairview Park Drive
Falls Church, VA 22042

ECF Nos. 70-5 ("Ex. 5") at p. 2, 70-6 ("Ex.6") at p. 2. In the "re:" line, the letters had the following: "Michael A. Sheets Pension Benefits Under Northrop Grumman Space & Mission Systems Corp. Salaried Pension Plan."." Ex. 5 at p. 2, Ex. 6 at p. 2.

Northrop argues that Sheets has not adequately pleaded his claim for statutory violations because Sheets's requests were not addressed to the administrator—here, the Committee. Mot. at 24. Sheets contest that these are, at best, hyper-technical violations, and that the letters were sent to the correct address and included the required information (name of participant and legal plan). Opp'n at 24.

Several courts both within and outside this district have held that as a penalty provision, section 1132(c) is strictly construed. *See, e.g., Haberern v. Kaupp Vascular Surgeons Ltd. Defined Ben. Pension Plan,* 24 F.3d 1491, 1505 (3d Cir. 1994) (citing *Ivan Allen Co. v. United States*, 422 U.S. 617, 626 (1975)); *see also Serpa v. SBC Telecommunications, Inc.* No. C03-4223 MHP, 2004 WL 3204008, *4 (N.D. Cal. Dec. 8, 2004). Such construction makes sense, as a penalty provision like section 1132(c) automatically sanctions a violator without a deeper look into the conduct. Here, the Court finds that Sheets did not address his letters to the administrator (the Committee), but instead addressed his letters to the "Northrop Grumman Benefits Center," which is not the plan administrator. As such, the Court finds that Sheets has not complied with the requirements of sections 1024 or 1132 and dismisses his claim. The dismissal is WITHOUT LEAVE TO AMEND, as it does not appear that this is a defect Sheets can cure since his letters are before the Court and none of them are addressed to the plan administrator.

***

## **CONCLUSION**

For the foregoing reasons, the Court hereby ORDERS that the Northrop Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART:

1.   The Motion is GRANTED WITHOUT LEAVE TO AMEND as to Sheets's claims to recover benefits under 29 U.S.C. § 1132 (First Claim for Relief), and Sheets's claims for breach of fiduciary duty insofar as the claim is based on plan misinterpretation, inadequate investigation, inadequate hiring, training, or supervision, and inadequate record maintenance (Second Claim for Relief) and for failure to provide a copy of the administrative file in violation of 29 U.S.C. §§ 1024, 1132 (Third Claim for Relief);

2.   The Motion is DENIED as to Sheets's claims for breach of fiduciary duty (Second Clam for Relief) insofar as the claim is based on misrepresentations, and

3.   The Court DISMISSES the Doe Defendants.

     IT IS SO ORDERED.

Dated: September 30, 2024

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge